IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville August 16, 2016

## LUIS GUILLEN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-04491    Lee V. Coffee, Judge

_____

**No. W2016-00198-CCA-R3-PC  -  Filed November 22, 2016**

_____

The Petitioner, Luis Guillen, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of one count of aggravated rape and three counts of aggravated kidnapping and resulting effective thirty-five-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Genna M. Lutz, Memphis, Tennessee, for the appellant, Luis Guillen.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In July 2010, the Shelby County Grand Jury indicted the Petitioner for one count of aggravated rape, a Class A felony, and three counts of aggravated kidnapping, a Class B felony, for events that occurred between December 26, 2009, and December 31, 2009. In January 2012, a jury convicted the Petitioner as charged. After a sentencing hearing, the trial court merged the aggravated kidnapping convictions and sentenced him as a

Range I, violent offender to consecutive sentences of twenty-five years for aggravated rape and ten years for aggravated kidnapping.

On direct appeal of his convictions to this court, the Petitioner argued that the evidence was insufficient to support the convictions and that his effective thirty-five-year sentence was excessive. <u>State v. Luis Guillen</u>, No. W2012-00826-CCA-R3-CD, 2013 WL 4007532, at *1 (Tenn. Crim. App. at Jackson, Aug. 2, 2013), <u>perm. to appeal denied</u>, (Tenn. Dec. 10, 2013). This court concluded that the evidence was sufficient, stating as follows:

> Evidence sufficient to support the jury's conclusion with respect [to] each of these elements [of aggravated rape] is contained in the record. The victim testified that the defendant attacked her and forced intercourse on her both over her resistance and against her will, notwithstanding her repeated pleas that she did not want to have sex. The victim testified that she was repeatedly beaten by the defendant during the assault and that she was injured as a result. The victim's testimony concerning her injuries was supported by numerous photographs presented at trial as well as by the testimony of law enforcement officers and medical personnel who treated her after the attack.
>
> . . . .
>
> Evidence sufficient to support the jury's conclusion with respect each of these elements [of aggravated kidnapping also] is contained in the record. The State presented considerable evidence at trial the defendant confined the victim at his residence for a period of nearly four days against her will. In addition to the victim's direct testimony on the subject, her testimony on these issues was supported by considerable circumstantial evidence, including the victim's friend's testimony concerning the unusual length of time that she was gone, her unusual behavior during conversations that they had with her on the phone, and the fear and anxiety that she exhibited immediately upon being returned home.
>
> With respect to the remaining elements of aggravated kidnapping, the State presented sufficient evidence to support

the jury's finding that the victim was injured during her period of confinement for the reasons we have previously summarized. The jury could also reasonably infer, based on the victim's testimony and that of other witnesses at trial, that the purpose of this confinement was to facilitate the rape and to prevent the victim from reporting it afterward.

Id. at *13. In addition, this court concluded that the trial court properly sentenced the Petitioner. Id. at *14.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief alleging, in pertinent part, that he received the ineffective assistance of counsel. The post-conviction court appointed counsel, and counsel filed an amended petition.

Relevant to this appeal, the Petitioner alleged in the amended petition that trial counsel was ineffective for failing to request adequate and appropriate jury instructions. At the evidentiary hearing, trial counsel testified that he received discovery, which included the offense report, police reports, and the victim's statement, and that he went over the discovery with the Petitioner. Spanish was the Petitioner's native language, but he spoke "some English." Counsel's secretary also spoke Spanish, and she would translate over the telephone for counsel when counsel met with the Petitioner. The State offered to let the Petitioner plead guilty to rape, a Class B felony, in exchange for an eight-year sentence to be served at eighty-five-percent release eligibility. However, the Petitioner "flatly refused" the offer.

Trial counsel testified that he advised the Petitioner not to testify at trial because the Petitioner was "cocky and arrogant" at times and had two large tattoos in the shape of teardrops under his eyes. Counsel was concerned that the State would question the Petitioner about the tattoos and his gang involvement in Mexico. Counsel also thought the Petitioner would not make a good witness, explaining as follows:

> [O]ur theory of the case was that he and [the victim] were dating, that they had gone to dinner, that they returned to his apartment and that they had sexual intercourse after they returned to his apartment, that she received a text message from a former boyfriend, and Mr. Guillen saw this text message, became angry and then beat her but did not have any further relations with [her].

In speaking with Mr. Guillen, one of the versions he told us was that all of that had certainly happened, but after he severely beat her, then they had further relations, and in his mind, those further relations after the beating were consensual, and I could not ever get him to understand that a woman who was severely beaten and had a broken nose and a fractured skull could [not] consent to relations or would [not] want to have sex at that point, and I was afraid that that version would come out.

Despite counsel's advice, the Petitioner chose to testify.

Trial counsel testified that he also represented the Petitioner on direct appeal of the Petitioner's convictions and that he was aware of our supreme court's opinion in State v. White. He said he did not "recall the rationale" for not raising a White issue in the Petitioner's motion for new trial but that "I believe it had to do with the Court's holding that retroactive application of White was not required." He also stated, "I should have [raised the issue], in retrospect."

On cross-examination, trial counsel testified that he became licensed to practice law in October 1997 and had been practicing law eighteen years at the time of the post-conviction evidentiary hearing. He practiced only criminal law. He said that he did not understand how the jury convicted the Petitioner of aggravated kidnapping "given the numerous opportunities that [the victim] had to just walk out of the apartment" and that the Petitioner thought the Petitioner was guilty of assault and false imprisonment. Regarding counsel's failure to raise a White issue in the motion for new trial or on direct appeal of the Petitioner's convictions, counsel stated, "My understanding was the application was not retroactive."

On redirect examination, trial counsel testified that "the facts of the case were that the rape happened one day and the confinement went on for several days." The State's original plea offer was a guilty plea to rape in exchange for an eighteen-year sentence to be served at eighty-five percent release eligibility. Although counsel negotiated the offer down to eight years, the Petitioner told counsel that "a plea to a felony was out of the question."

The Petitioner testified through an interpreter that trial counsel met with him in jail twice. They also met in the "lock-up area" when the Petitioner came to court. The Petitioner said he and counsel did not have much time to discuss his case because counsel "was busy in Court and they were calling him." The Petitioner had discovery materials, but trial counsel never discussed the discovery materials with him. Counsel told the

Petitioner about a fifteen-year plea offer from the State to be served at eighty-five percent release eligibility.

The Petitioner testified that he and counsel discussed the Petitioner's testifying at trial. However, they did not discuss his testifying until the day he was scheduled to testify, and the Petitioner had "[f]ifteen minutes, thirty minutes, something like that" to decide. The Petitioner asked counsel "what chance did [he] have to win" if he testified. Counsel told the Petitioner that the victim's testimony was inconsistent, that the Petitioner had a "fifty-fifty chance of winning or losing," and that counsel was concerned about the jury's seeing the Petitioner's tattoos.

On cross-examination, the Petitioner testified that he and trial counsel got along well for the "few times" he saw counsel. Counsel never brought his Spanish-speaking assistant to meet with the Petitioner, but the Petitioner spoke with her "for a moment" by telephone. The Petitioner acknowledged that the State's original plea offer may have been for eighteen years and said, "I don't remember." He said he did not know about our supreme court's opinion in State v. White and never asked that counsel raise a White issue.

At the conclusion of the hearing, the post-conviction court noted that the trial court read the pattern jury instructions in effect at the time of trial, which did not include a White instruction. The post-conviction court then stated that, in any event,

> [t]here is absolutely no way that these facts would support a contention that this is plain error in this case, . . . and what the trial record shows is that this is an offense that took place over four days. This young woman was beaten, she was held hostage, she was afraid to call for help. When she talked to someone on the phone, Mr. Guillen was there with her all the time monitoring exactly what was being said. When he was not there, she did not have use of her cell phone. And this is a situation where she's held hostage, beaten for four days, and the kidnapping, the confinement in this case, is not incidental.

The court noted that this court could have addressed the issue as plain error in its direct appeal opinion of the Petitioner's convictions but chose not to do so. The post-conviction court found that the Petitioner was not prejudiced by counsel's failure to raise the White issue and that he was not entitled to relief.

## II.  Analysis

On appeal, the Petitioner maintains that he received the ineffective assistance of counsel because trial counsel failed to argue in the motion for new trial or on direct appeal of the Petitioner's convictions that the trial court erred by failing to instruct the jury pursuant to State v. White. He argues that a White instruction was required because "the proof in his case could have been interpreted in different ways" and, therefore, the jury should have decided whether his removal or confinement of the victim was essentially incidental to the accompanying offense of aggravated rape. The State argues that the Petitioner is not entitled to relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not

- 6 -

address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the State charged the Petitioner with aggravated rape and three alternative theories of aggravated kidnapping, i.e., false imprisonment committed to facilitate the commission of a felony, false imprisonment committed with the intent to terrorize the victim, and false imprisonment where the victim suffers serious bodily injury. See Tenn. Code Ann. § 39-13-304(a)(1), (3), (4). False imprisonment is defined as the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. § 39-13-302(a). The jury ultimately convicted the Petitioner of all four offenses as charged.

Our case law reveals a long-standing issue regarding the legitimacy of a kidnapping conviction when the act(s) establishing the offense occurred during an accompanying felony. In State v. Anthony, 817 S.W.2d 299, 301 (Tenn. 1991), a jury convicted the defendant of the armed burglary of a Shoney's restaurant, the armed robbery of the restaurant's manager, and the aggravated kidnappings of the manager and five other employees. In a split decision, this court reversed all of the aggravated kidnapping convictions, holding that "[u]nless independent and separate fact patterns for both the armed robbery and the aggravated kidnapping can be proven, appellant can be convicted of only the armed robbery." Anthony, 817 S.W.2d at 30. Our supreme court, citing due process concerns, held that before a separate kidnapping conviction may be sustained, there must be a determination of

> whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony and [was] not, therefore, sufficient to support a separate conviction for kidnapping, or whether it [was] significant enough, in and of itself, to warrant independent prosecution and [was], therefore, sufficient to support such conviction.

Id. at 306. After its own analysis, our supreme court affirmed this court's decision. Id. at 307-08.

Later, in State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997), our supreme court modified the Anthony court's "essentially incidental" analysis and established a two-prong test for determining whether a separate conviction for kidnapping violates due process. The first step concerned a determination of whether the movement or confinement was beyond that necessary to commit the accompanying felony. Id. If so, the second step concerned ascertaining whether the additional movement or confinement

(1) prevented the victim from summoning help; (2) lessened the appellant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id.

In White, our supreme court expressly overruled Anthony and its progeny, holding that "[t]he separate due process test articulated first in Anthony, and subsequently refined in Dixon . . . , is . . . no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." 362 S.W.3d at 578. Instead, the court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law," thereby concluding that a defendant's constitutional concerns are protected by appellate review of the sufficiency of the convicting evidence. Id. at 577-78. Therefore, our supreme court cautioned that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." Id. To effectuate this end, our supreme court devised the following instruction to be given by trial courts:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;
>
> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> • whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

• whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

• whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

Our review of the jury instructions in this case confirms that the trial court instructed the jury in accordance with the pattern jury instruction for aggravated kidnapping in effect at the time of the Petitioner's trial and "did not define the key element—the substantial interference with the victim's liberty—as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." White, 362 S.W.3d at 580. Moreover, although our supreme court filed White on March 9, 2012, which was after the Petitioner's trial, trial counsel filed the Petitioner's motion for new trial on March 23, 2012. Thus, counsel, who testified that he was aware of White but did not think White applied retroactively, could have raised a White issue in the Petitioner's motion for new trial and on direct appeal of the Petitioner's convictions. See State v. Bennie Osby, No. W2012-00408-CCA-R3-CD, 2012 WL 5381371, at *7 (Tenn. Crim. App. at Jackson, Nov. 2, 2012), perm. to appeal denied, (Tenn. 2013) (concluding that our supreme court "intended retroactive application of the ruling to those already tried cases in the appellate pipeline, that is pending direct appeal, at the time it was filed and that its use of the word 'retroactive' was intended to prevent use of the ruling for collateral attack").

Regardless, even if counsel was deficient for failing to raise the issue, we conclude that the Petitioner was not prejudiced. The evidence shows that the Petitioner raped the victim and then confined her to his apartment for several days. Thus, we have no hesitation in concluding that the Petitioner's confinement of the victim was not essentially incidental to the accompanying aggravated rape and was not subject to different interpretations by the jury. Accordingly, the Petitioner would have been unsuccessful if counsel had raised the White issue in the motion for new trial or on direct appeal of the Petitioner's convictions, and the Petitioner is not entitled to post-conviction relief.

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE